IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**NICHOLAS CRABTREE**                                                                 **PLAINTIFF**

V.                              No. 4:24-CV-00124-LPR-ERE

**MARTIN O'MALLEY,**
**Commissioner of Social Security**                                          **DEFENDANT**

### RECOMMENDED DISPOSITION

This Recommended Disposition ("RD") has been sent to United States District Judge Lee P. Rudofsky. You may file objections if you disagree with the findings and conclusions set out in the RD. Objections should be specific, include the factual or legal basis for the objection, and must be filed within fourteen days. If you do not object, you risk waiving the right to appeal questions of fact, and Judge Rudofsky can adopt this RD without independently reviewing the record.

I.   **Background**

On March 18, 2021, Mr. Nicholas Crabtree protectively filed an application for benefits due to sero-negative rheumatoid arthritis, Ehlers-Danlos syndrome, hypophosphatasia, hypophosphatemia, hypermobility, Raynaud's phenomenon, cramp fasciculation syndrome, spondylolisthesis, bilateral carpal tunnel syndrome, using a walker, depression, and anxiety. *Tr. 15, 305.*

Mr. Crabtree's claim was denied initially and upon reconsideration. At Mr. Crabtree's request, an Administrative Law Judge ("ALJ") held a hearing on April 4,

2023, where Mr. Crabtree appeared with his lawyer, and the ALJ heard testimony from Mr. Crabtree and a vocational expert ("VE"). *Tr. 48-84.* The ALJ issued a decision on April 28, 2023, finding that Mr. Crabtree was not disabled. *Tr. 12-28.* The Appeals Council denied Mr. Crabtree's request for review, making the ALJ's decision the Commissioner's final decision. *Tr. 1-7.*

Mr. Crabtree, who was twenty-nine years old at the time of the hearing, completed one year of college and has past relevant work experience as a building maintenance man/repairer and cashier. *Tr. 53-54, 79.*

## II.   The ALJ's Decision[1]

The ALJ found that Mr. Crabtree had not engaged in substantial gainful activity since February 15, 2021, the alleged onset date. *Tr. 17.* The ALJ also concluded that Mr. Crabtree had the following severe impairments: lumbar and cervical degenerative changes, rheumatoid arthritis, generalized osteoarthritis, right hand tenosynovitis, Raynaud's disease, hypophosphatasia, Ehlers-Danlos syndrome, anxiety, depression, and a mild cognitive impairment. *Tr. 18.* However, the ALJ concluded that Mr. Crabtree did not have an impairment or combination of

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)-(g); 20 C.F.R. § 416.920(a)-(g).

2

impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

According to the ALJ, Mr. Crabtree had the residual functional capacity ("RFC") to perform sedentary work, with the following limitations: (1) only occasional climbing of ramps and stairs, but no climbing ladders, ropes, or scaffolds; (2) occasional balancing, stooping, kneeling, crouching, and crawling; (3) no exposure to hazards such as unprotected heights and dangerous moving machinery; (4) frequent use of the upper extremities to reach, handle, finger, and feel; and (5) only simple, repetitive work, limited to simple work-related decisions. *Tr. 20.*

In response to hypothetical questions incorporating the above limitations, the VE testified that a substantial number of potential jobs were available in the national economy, including order clerk, table worker, and surveillance system monitor. *Tr. 30, 81.* Accordingly, the ALJ determined that Mr. Crabtree was not disabled.

## III. Discussion

### A. Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence]

adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

B. **Mr. Crabtree's Arguments for Reversal.**

Mr. Crabtree contends that the Commissioner's decision is not supported by substantial evidence, because the ALJ erred by: (1) concluding that he did not meet Listing 14.09; and (2) finding an RFC based on the ALJ's lay opinion. *Doc. 8 at 9, 13*. After carefully reviewing the record as a whole, the undersigned recommends affirming the Commissioner.

1. **Listing 14.09**

Mr. Crabtree contends that the ALJ's decision is not supported by substantial evidence because the ALJ found that his combination of impairments did not meet or medically equal the severity of Listing 14.09, which governs inflammatory arthritis.

The ALJ addressed Listing 14.09 as follows:

> With regard to listing 14.09 for inflammatory arthritis, the evidence
> fails to demonstrate the requisite inflammation, deformity, ankylosing

4

spondylitis, spondyloarthropathy, or marked limitations in activities of daily living, social functioning, or ability to complete tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

*Tr. 18-19*.

Mr. Crabtree first argues that the "medical records in evidence satisfy all the elements necessary to meet Listing 14.09D"[2] and points out that his "rheumatoid arthritis manifested regularly with pain and swelling of the joints." *Doc. 8 at 9*. Social Security listings "define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). If a claimant can show his impairments meet or equal a listing, he is presumed unable to work. *Id*. It is Mr. Crabtree's burden to make this showing. *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010). To show an impairment *matches* a particular listing, it must meet all of the specified medical criteria. *Marciniak v. Shalala*, 49 F.3d 1350,

---

[2] Listing 14.09D provides:

> Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.
>
> 2. Limitation in maintaining social functioning.
>
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. pt. 404, subpt. P, app. 1 § 14.09.

5

1353 (8th Cir 1995). To demonstrate "medical equivalency" to a listing, a claimant must present medical findings which are equal in severity to all of the criteria for the most similar listed impairment. *Id*.

Listing 14.09D requires "repeated manifestations of inflammatory arthritis." As Mr. Crabtree points out, there is evidence of inflammation, but the ALJ found that "the evidence fails to demonstrate the requisite inflammation . . . ." *Tr. 18-19*. Post-onset date medical records repeatedly provide that "joints were found to be non-tender and non-swollen" or with "no tenderness." *Tr. 663, 672, 969, 1004, 1010, 1018, 1024, 1030, 1047, 1128, 1188*. Additionally, there were numerous instances of "normal full range of motion of all joints with normal pulses in all extremities." *Tr. 609, 1149, 1169, 1193*. Again, the Court will not reverse the Commissioner's decision "merely because substantial evidence exists for the opposite decision." *Long*, 108 F.3d at 187 (citation omitted). In fact, shortly after the alleged onset date, one treating physician believed that the hypophosphatasia may have "been the cause of his symptoms rather than a different primary rheumatologic problem or a different genetic condition." *Tr. 470*. He also doubted that Mr. Crabtree had Ehlers-Danlos syndrome. *Id.*

Even if Mr. Crabtree met the frequency requirements of the listing, he still must have marked levels of limitations in: (1) activities of daily living; (2) maintaining social functioning; or (3) completing tasks in a timely manner due to

deficiencies in concentration, persistence, or pace. The ALJ concluded that the record failed to support marked limitations in any of these areas. *Tr. 18-19*.

"A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis." *Tr. 19*. Although Mr. Crabtree said that his joints hurt a lot, he described himself as "supermobile." *Tr. 1165*. He also reported that "once he pops his joints, [the] pain subsides." *Tr. 1061*. One examination noted that "Mr. Crabtree is independent for all basic activities of daily living," but "requires assistance from his wife at times due to pain." *Tr. 1249*. He also mows the lawn with a riding lawn mower, drives, takes his daughter to and from school, exercises several days a week, and plays video games. *Tr. 62, 67, 603, 1046, 1049, 1065, 1069, 1072, 1075, 1079, 1082, 1085, 1089, 1092, 1251*.

Regarding concentration, persistence, or pace, the ALJ noted that a neuropsychological assessment revealed attention across tasks, average auditory attention, and above average visual attention. Records also repeatedly show that his attention span, cognition, memory, and concentration are appropriate and normal. *Tr. 22, 472, 969, 1004, 1010, 1018, 1024, 1030, 1128*.

### 2. The RFC Was Not Erroneous.

Mr. Crabtree contends that the RFC is not supported by substantial evidence because "there are no medical opinions regarding mental limitations in the record"

7

which means the RFC "is based entirely on the ALJ's own lay opinion derived from interpreting the raw medical data." *Doc. 8 at 14*.

Mr. Crabtree bears the burden of proving his RFC, which represents the most he can do despite the combined effects of his credible limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). "It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own descriptions of his limitations." *Id*. "[T]here is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

The only non-exertional limitation in the RFC was that Mr. Crabtree could perform "only simple, repetitive work limited to simple work-related decisions." *Tr. 20*.

The ALJ noted that the "state agency psychological consultants stated that the claimant's mental impairments were not severe" but found these opinions only partially supported by and consistent with the evidence. The ALJ noted that Mr. Crabtree repeatedly reported having brain fog to his physicians, had difficulty managing his calendar, and demonstrated areas of cognitive weakness, as set out in a December 2022 neuropsychological assessment. *Tr. 28, 1248-50, 1254*. Even if there was error, as alleged, it was harmless. In fact, the more restrictive RFC is to

Mr. Crabtree's benefit, rather than detriment. "Nothing before the Court shows, and indeed plaintiff does not argue, that a less restrictive mental RFC would have resulted in a finding of disability . . . [or] been decided differently in the absence of the ALJ's claimed error in determining plaintiff's RFC, any such error was harmless." *Wiley v. Colvin*, No. 4:14CV330-TIA, 2015 WL 1411943, at *9 (E.D. Mo. Mar. 26, 2015) (citing *Byes v. Astrue*, 687 F.3d 913, 917–18 (8th Cir. 2012)).

The RFC finding reflected the limitations which the ALJ found to be credible, and it is supported by the medical evidence as a whole.

## IV.  Conclusion

The ALJ applied proper legal standards in evaluating Mr. Crabtree's claims, and substantial evidence supports the decision to deny benefits.

IT IS THEREFORE RECOMMENDED that the Court affirm the decision and enter judgment in favor of the Commissioner.

Dated 31 July 2024.

_____
UNITED STATES MAGISTRATE JUDGE